CASE 87—CONVEYANCES—JANUARY 19, 1884.

# Easum v. Pirtle.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. According to the proof, appellant paid and agreed with his father to pay the full value of the land purchased by him, and, in addition thereto, bound himself to support both father and mother during their lives.
2. That the son took upon himself the support of his father and mother during their lives, in the discharge of a natural obligation, while at the same time he paid and bound himself to pay the full value of the land sought to be subjected, not only shows no fraud as to creditors, but stamps the conduct of the son as just to the creditors of his father and faithful to his natural obligations.
3. Such conduct neither works any injury to creditors, nor does it make the conveyance voluntary.

BROWN & DAVIE FOR APPELLANT.

It is shown without controversy that appellant paid and agreed to pay his father the full value of the land.

The agreement made by the son to support his father and mother in addition does not indicate fraud as against creditors, nor does it in any case show any wrong intent either as to vendee or vendor. (Bump on Fraudulent Conveyances, 247; 16 N. H., 372; Slater v. Dudley, 18 Pick, 375.)

Unless the transaction is tainted with moral turpitude, the grantee will have a lien for the money advanced by him. (Ross v. Wilson, 7 Bush, 35; 26 Grattan, 926; Short v. Tinsley, 1 Met., 397; Bump on Fraud. Conveyances, 397.)

JOHN STITES AND SHACKELFORD MILLER FOR APPELLEE.

The copy of the judgment filed shows that long prior to January, 1872, the debt sued upon was an existing debt, as Harman Easum, and as early as 1868, had been reduced to a judgment.

The conveyance is voluntary, and no fraud of appellee as one of the creditors of Harman Easum. (Hawkins v. Moffatt, 10 Mon., 82; Gen. Stat., chap. 24, sec. 8; Geiger v. Welch, 1 Bank., 349; 2 Grant's cases, 448; 10 N. Y., 289.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In April, 1869, an execution is sued on a judgment rendered in favor of Henry Pirtle against Harman Easum, and was returned, *no property found.*

After this time Easum became the owner of a tract of

land in Jefferson county, containing about one hundred acres. In January, 1872, Easum being indebted to his son Charles in the sum of $864, sold to him this land for $2,000, and executed to him a bond for title. The son took possession, and has claimed to own the land since that time. The father died suddenly in 1875, and his administrator filed a bill in equity for the settlement of his estate, making Charles Easum a defendant, and alleging that a part of the purchase money was unpaid, and the court adjudged there was still due on the land about $490; $151 of this sum was paid into court, and the balance paid to his mother, who was asserting claim to dower.

Charles had paid his father on what the latter was owing him, and for other debts due by the father, near the sum of $1,500 before the action for a settlement of the estate was instituted. The purpose of the sale from the father to the son was to pay the indebtedness of the father, and there is nothing showing that the son knew of the amount in controversy, and an entire absence of proof showing that the object of the conveyance was to defraud any one. We must assume from the record that the conveyance was made in good faith, and is neither actually or constructively fraudulent, unless the additional consideration expressed in the bond, *that the son would support and maintain his father and mother during their natural lives*, makes it fraudulent as to antecedent creditors. The deed was not voluntary if the appellant paid the actual cash value of the property, although he may have also agreed to support the father and mother as long as they lived. It seemed that they owned no other estate, and the natural obligation on the son to provide for his parents, and his desire to secure his debt, no doubt caused the insertion of the covenant in the deed by which

the support of the grantee and his wife formed part of the consideration. Fifteen hundred dollars, it is alleged and proven, was the full and fair value of the land, and, if so, the creditor has not been injured, and no presumptive or constructive fraud can well exist where the purchaser buys in good faith and pays the full value of the property. If the amount paid was less than the value of the property, or the intention to defraud was shown, there could be no doubt as to the right of the creditors to subject the property to the payment of his debt.

In every case where the deed or bond has been held to be actually or constructively fraudulent, the rights of the creditor have been in some manner affected by it. In what particular can the creditor say he has been injured in this case? A sale has been made in good faith and for the full value of the property, and the consideration paid. Suppose the obligation to support the parents had been omitted from the deed, will it then be insisted, when the full value of the property has been paid in money, upon a purchase made in good faith, that the deed is nevertheless constructively fraudulent? The additional obligation to support the parents of the appellant may conduce to show that the property was worth more than the $2,000; but in this case it seems to be conceded, as well as established from the facts, that the property for which $2,000 was paid was only worth $1,500. Inadequacy of consideration is a *badge* of fraud, and an agreement to support the debtor and his family, although a valuable consideration between the parties to the contract, is not good against creditors. "Evidence, however, may be given to show that the grantee paid the full value of the property, and that the reservation of the right to a future support is of no value to creditors." (Bump on

Fraudulent Conveyances, p. 217.) In Albee v. Webster
(16 New Hampshire) the father conveyed his land to his son
to secure the latter in a debt due him, and in consideration
that the son would pay off other debts, the conveyance fur-
ther reciting that the son should support the father for life.
It was held that the deed was valid as to creditors upon the
ground that the actual consideration paid was the full
value of the property, and the creditors in no wise injured.
The burden assumed by the son in this case, as in the one
cited, does not prejudice the rights of creditors.    The case
of Slater v. Dudley (reported in 18 Pickering) was, when
the father conveyed to the son his farm, the son paying its
full value, and also agreeing to support the father, the court
established the deed because the full value was paid, regard-
less of the obligation to support the father.    In Henderson
v. Hunton (26 Grattan) a similar question was determined,
upholding the conveyance as against creditors.    In this case
the son supported the father until his death, in 1875, and
was in the possession of the farm, claiming it as his own
under the purchase, and no effort on the part of the execu-
tion creditor to make his debt from 1869, when the execu-
tion was returned, *no property found*, until this action was
filed by him to subject the land in 1881, while limitation is
not presented as a bar to the proceeding, the chancellor
would not permit, after such a lapse of time, a mere sus-
picion as to the fairness of the transaction to control his
action; but the facts of this case seem to be so well estab-
lished that it is difficult even to entertain a doubt as to the
good faith of the parties.    In Hawkins v. Moffett (10 B.
M.), relied on by appellee, a young man involved in debt
transferred an estate worth $1,169 for a consideration of
$500, and for maintenance for ten years.    To sanction such

a contract would be permitting the debtor to exhaust his entire estate in the payment of his board and clothing at the expense of creditors, and must be necessarily held to be fraudulent.

The father in this case, or his estate, was indebted to the son in the sum of $120 loaned money, $120 expenses to New York, and $80 funeral bill, &c., to all of which, together with other smaller items, were applied as a credit on the land debt, and this in a settlement of the father's estate made prior to the institution of appellee's action. The credits were properly given so far as the record shows, and if the debt for the land was in good faith paid before this action was filed, no recovery can be had if the price agreed to be paid was its full value. Why the bond for title is not good, with the purchase in possession, as against creditors and purchasers, if not fraudulent, we can not see. Here the bond was given, the purchaser placed in possession, and there remained for many years before appellee brought his action. As the case seems to have been decided in the court below upon the legal questions involved, the appellee, if he desires, may within a reasonable time take proof as to the consideration paid for the land. If the consideration was the fair value of the land, and paid by the appellant in the discharge of debts due him or others by the testator, or for debts for which the estate was liable, and paid by the appellant before this suit was instituted, the judgment should be for appellant.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.