CASE 73—EQUITY—SEPTEMBER 26, 1882.

| 80 | 381 |
|-----|-----|
| 108 | 40 |

# Beatty, &c., v. Dudley, assignee.

### APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. The payment of a debt, or the giving of an indemnity against loss by reason of suretyship, is not fraudulent, unless the creditor or surety received from the debtor more of his money or property than was necessary to pay the debt or protect the surety, or unless they joined in some act to hinder, delay, or defraud creditors.

2. Such preferences are legal, unless attacked under the state and federal statutes within the time prescribed therein.

3. There is no evidence that appellant had notice of any fraudulent intent on the part of his assignor when the notes were assigned to him; indeed, there could be no fraudulent intent in preferring him as his surety.

4. Inasmuch as the assignment was made simply to prefer appellant as surety, it comes within that class of cases provided for by the statute of 1856, and appellee failing to file his suit within six months after the assignment, it will not be disturbed.

W. H. HOLT, JOHN J. CORNELISON, AND B. J. PETERS FOR APPELLANTS.

1. There is not the least evidence of fraud either upon the part of the assignor of the notes or appellant Beatty, but the case is simply the giving by the debtor to his surety indemnity against loss.

2. The demurrer to the petition should have been sustained, because it does not aver that the assignment of the notes was within four months before Shultz filed his petition in bankruptcy.

3. Failing to file his petition within six months, the case cannot be brought within the act of 1856. (14 Wallace, 248; sec. 35, Bankrupt Act.)

REID & STONE FOR APPELLEE.

When Schultz assigned the notes to appellant Beatty he was hopelessly insolvent, and Beatty must have known it. He took from Schultz the entire proceeds of his land and stock, apparently to secure him as Schultz's surety. There can be no doubt that Schultz intended to hinder and delay his creditors, and to give his father-in-law a fraudulent preference. (Gen. Stat., chap. 44, art 1, sec. 1; U. S. Bankrupt Law, sec. 5046; 1 B. R., 542; 8 Ib., 225; 10 Ib., 503; 105 Mass., 136; 7 B. R., 1; 17 Wall., 351; 1 Dill., 40; 8 B. R., 117; Bump on Bank., 534; 1 B. R., 485; 13 Ib., 157; 8 Ib., 521; 4 Ib., 178; Edwards v. Coleman, 2 Bibb, 204.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

In view of the importance of the questions involved, and as a response to the earnest petition for a rehearing by the learned counsel who presented it, we have concluded to restate, in a more extended form, the opinion we entertain of the law and facts pertinent to a decision of the material issues in this action.

On the 26th day of February, 1877, Shultz conveyed a tract of land to Mary Jones for $7,000; one third thereof was paid in hand, and the other two thirds secured by promissory notes, due respectively March 1st, 1878, and March 1st, 1879, which, on the same day of their execution, were assigned by Shultz to Beatty, to indemnify him against loss on account of his suretyship for Shultz in a large sum.

On the 4th of August, 1877, Shultz filed his voluntary petition in bankruptcy, and the appellee, Dudley, was appointed as his assignee.

In November thereafter the appellee brought this action to recover said notes and the sum that had been paid on them, on the alleged grounds that Shultz had fraudulently assigned them; that he was insolvent, and had assigned them to Beatty with the view of giving him a preference.

These allegations of the petition appear to be inconsistent; but we are inclined to think they are not condemned by subsection 4 of section 113, Civil Code, as it is in effect alleged that the plaintiff does not know which of the inconsistent allegations is true, but that one of them is; and if the assigned notes had been more than sufficient to pay Beatty's liability, which was not fully known at the institution of the action, the allegation of fraud was appropriate

as to the excess, although the remainder of the assignment amounted only to a preference of Beatty.

The appellants' answer put in issue all of the material averments of the petition, and they also pleaded the statutes of limitation. The evidence shows that Beatty's liability as Shultz's surety was greater than the amount of the notes in contest; that Shultz, at the time of the assignment of the notes, was insolvent, and that Beatty had reasonable grounds so to believe, if indeed he was not actually cognizant of the fact.

It appears that Beatty is the father-in-law of Shultz, but did not participate in the sale to Mrs. Jones; nor are the assigned notes, or any part of them, to be held in trust for Shultz. Under this state of facts it is insisted that both Shultz and Beatty were guilty of actual fraud, and that sections 5128 and 5129 of the Revised Statutes of the United States are applicable thereto, or that section 1, article 1, chapter 44, General Statutes, embrace this case. It never has been held that the payment of a debt, or the giving of an indemnity against loss by reason of suretyship, is actually fraudulent, unless the creditor or surety received from the debtor more of his property than was necessary to pay the debt or protect the surety, or united with him in illegally placing beyond the reach of his creditors his property or some part of it, or aided him in some act which would hinder, delay, or defraud his creditors.

To some one of these exceptions it will be found, by careful analysis, that all of the cases cited are applicable, and we have been unable to find any case which decides that the bare collection or indemity against debt by legal means, although the debtor be known to be insolvent, is

either fraudulent or hinders or delays creditors in contemplation of law.

The cases of Edwards, &c., v. Coleman, 2 Bibb, 204; Lyne, &c., v. Bank of Kentucky, 5 J. J. M., 554; Lowry v. Fisher, 2 Bush, relate to *voluntary* conveyances, and in each it will be found that the transactions were in whole or part without valuable consideration.

The two cases of Pett's trustee v. Viley, 4th Bibb, and McKinley, &c., v. Combs, &c., 1 Mon., are similar, and based upon the doctrine that a conveyance in trust for a nominal consideration, and to pay debts without either the request or subsequent consent of the creditors, is without consideration. This fact, however, distinguishes the former from the latter case. In the former, the deed was held fraudulent because *judgments* were obtained against the debtor before it was executed.

In Ward, &c., v. Trotter, &c., 3 Mon., 4, the deed of trust was held fraudulent because it was made to prevent a sacrifice of the grantor's property, and thereby ''hinder his creditors from effectively using the lawful means of obtaining the payment of their debts.'' Nevertheless, in that case it was decided to be lawful for a debtor, by a deed of trust, to prefer and secure one creditor over another.

Such preferences are legal and enforceable unless attacked under the provisions of the state and federal statutes within six months after they are made. The case of White v. Graves, 7th J. J. Mar., 525, turned upon the secret parol agreement between the grantor and trustee that the former should have part of the money for which the property embraced by the deed might sell, which was held to be fraudulent, and rendered the deed of trust illegal.

In the case of Lehmer, &c., v. Herr, &c., nine badges of actual fraud were enumerated by the court, and among them was the potent fact that no sufficient evidence of the extent or character of the debts sought to be preferred in favor of the grantor's brothers and sisters was adduced by the debtor or preferred creditors, although they had ample opportunity to have done so.

The main point in the case of Beadles and wife v. Miller, Gardner, &c., 9th Bush, 410, was to show that the grantee, who bought the land from her brother, and paid him a fair price for it in money, entered into the contract with him *with notice* that he intended, by the sale and conveyance to her, to delay, hinder, or defraud his creditors.

The court decided that she did not have notice of such a purpose upon his part, and upheld the conveyance. It is clear·from this decision that, had notice of the intention of the grantor to delay, hinder, or defraud his creditors by the conveyance been communicated to her before she paid him the money and accepted the deed, it would have been held fraudulent, in pursuance of the last sentence of section 1, article 1, chapter 44, General Statutes, title "Fraudulent Conveyances and Devises," which reads:

"This section shall not affect the title of a purchaser for a valuable consideration, unless it appear that he had notice of the fraudulent intent of the immediate grantor, or of the fraud rendering void the title of such grantor."

And we think this statute was intended to provide against the fraudulent practices of vendees in knowingly facilitating the disposition of property by vendors to avoid the payment of their just debts.

In this case, however, there is no evidence that Beatty knew of any fraudulent intent on the part of his assignor in making the assignment, and, indeed, he could have had no such intent, although he made the assignment to prefer Beatty, as such an assignment with such a purpose is not fraudulent in law; nor does it fall within the provisions of the statute quoted, because it was an indemnity against antecedent debts, and did not enable the assignor to divert any portion of his property from the payment of his debts; nor did Beatty receive the notes with notice that Mrs. Jones had bought Shultz's land with the purpose of aiding him in delaying, hindering, or cheating his creditors, and there is no evidence in the record tending to prove such an intent upon her part, or that Shultz made the sale with the intent to delay, hinder, or defraud his creditors. Such notice and purpose cannot be presumed against Beatty under the facts and circumstances in this case, and they are not proven, hence actual fraud is not established against him.

And as more than four months expired after the assignment and before Shultz's bankruptcy, the statute of limitation provided in section 5128, Revised Statutes of the United States, furnished a complete bar to the action of appellees. That section applies to payments or assignments to secure antecedent debts, and embraces transactions like this, which are protected by limitation after four months.

As the assignment was not voluntary, and therefore not within section 2, article 1, chapter 44, General Statutes, but for a valuable and commensurate consideration, it belongs to the category of cases provided for by the statute of 1856, which is contained in article 2, chapter 44, General Statutes, and cannot be avoided, because the suit was not brought

within six months after the assignment and delivery of the notes.

Wherefore, the judgment is reversed, and cause remanded, with directions to render judgment in conformity to the principles of this opinion.