CASE 18—PETITION EQUITY—FEBRUARY 6, 1895.

## Seiler, &c. v. Walz.

### APPEAL FROM PENDLETON CIRCUIT COURT.

1. FRAUDULENT CONVEYANCE—PREFERENCE OF CREDITORS.—A conveyance by a father to his son, who is a bona fide creditor of the father, is not actually fraudulent as against the other creditors of the father, and can not be set aside by such creditors under the provisions of section 1, art. 1, chapter 44, Gen. States. (sec. 1906 Ky. States.), that gifts, conveyances, assignments or transfers of estates, real or personal, made with the intent to delay, hinder or defraud creditors or purchasers, shall be void as against such creditors or purchasers. It was only a preference of one creditor over others, which is not actual fraud, and relief should have been sought under the provisions of section 1, article 2, chap. 44 Gen. Stats. (sec. 1910 Ky. Stats.), with reference to preferring creditors in contemplation of insolvency.

2. SAME.—But in this case the son was not a creditor to the full extent of the value or the purchase price of the land conveyed, and the intention of the father being to prefer the son as a creditor and to place the residue beyond the reach of his other creditors, and the son having full notice of these purposes on the part of the father, the attaching creditor should have been adjudged a lien upon the land conveyed for the difference between the debt of the son and the purchase price, although the son had paid the said difference in cash to the father.

Seiler, &c. v. Walz.

W. M. & C. A. RARDIN FOR APPELLANTS.

1. The Appellee having filed his claim against the assigned estate of the principal in the note, he should in this suit against the surety on that note be made to account for the amount he received out of the assigned estate, as he had no right of action against the surety except for the balance.

2. The allegations of the petition are not sufficient to support the attachment or to authorize the Court to set aside the conveyance, it not being alleged that the debtor was either insolvent and made the conveyance in contemplation of insolvency, or was selling and disposing of his property in such a way as would prevent the creditor from making his debt to the ordinary way by execution. Brown v. Brown, 91 Ky., 643.

   And the petition must allege that the act was done in contemplation of insolvency, with the design to prefer. Heidrick v. Silna, 89 Ky., 422.

3. An innocent purchaser who buys property for a valuable consideration will be protected, although the conveyance was made by the grantor with a fraudulent intent. Violett v. Violett, 2 Dana, 323; Ratliff v. Trimble, 12 B. M., 32. And where a purchaser for a valuable consideration has acted in good faith and practiced no fraud, he is "regarded as having a higher equity than general creditors." Enders v. Williams, 1 Met., 346; Lewis v. Lone, 2 B. M., 345.

SIMMONS & SIMMONS FOR APPELLEE.

1. In a suit under the provisions of sec. 1, art. 1, chap. 44, Gen. Stats., to set aside a conveyance, it is not necessary to show that the grantee acted with the intention of aiding in the fraud of the grantor; it is sufficient if the vendee has knowledge of it, or from the circumstances it may be inferred that he had such knowledge, or good grounds to suspect the fraudulent purpose of the grantor. Foster v. Grigsby, 1 Bush, 95.

2. Such transactions as the one in this case are always viewed with suspicion by the Chancellor and closely scrutinized. Ray v. Lawrence, 8 Dana, 78; Enders v. Swayne, 8 Dana, 103; Thoms v. Southard, 2 Dana, 478; Brady v. Briscoe, 2 J. J. M., 215; Poage v. Boyce, 6 J. J. M., 77; Harrison v. Campbell, 6 Dana, 263; Herron v. Morford, 9 Dana, 450; Caudill v. Goeble, 6 Ky. L. R. 575; Lutkenhoff v. Lutkenhoff, 13 Ky. L. R., 584.

3. The evidence shows conclusively that the conveyance was made by the father for the fraudulent purpose of cheating, hindering and delaying his creditors, and that the son was fully aware of that purpose.

Seiler, &c. v. Walz.

L. T. APPLEGATE ON SAME SIDE.

L. T. APPLEGATE AND SIMMONS & SIMMONS IN PETITION FOR RE-
HEARING.

1. The supersedeas in this case stayed proceedings on all parts of
the judgment, including the personal judgment against Geo. F.
Seiler, and there being no serious defense to that personal judg-
ment, it, at least, should be affirmed with damages. Young v.
Ditto, 2 J. J. M., 72; Gilpin v. Hord, 85 Ky., 213; Leopold v.
Furber, 84 Ky., 214; Mahlman v. Williams, 89 Ky., 282.

2. A conveyance may be only preferential as between creditors, and
at the same time be actually fraudulent. In this case the trans-
action was tainted throughout with actual fraud, and the con-
veyance was properly set aside. Foster v. Grigsby, 1 Bush, 95;
Herron v. Morford, 9 Dana, 450; Enders v. Swayne, 8 Dana, 103;
Wood v. Goff, 7 Bush, 63; Rodman v. Moody, 14 Ky. L. R., 202;
Johnson v. Williams, 82 Ky., 45.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT:

The appellant, G. A. Seiler, was a young man of thrifty
habits, and by the aid of his father, at his starting
out to work and trade for himself, had accumulated
some $2,000 up to the 5th of October, 1891, when his
father, George F. Seiler, his co-appellant here, sold and
conveyed to him a tract of 100 acres of land, of inferior
quality, in Pendleton county. The consideration of the
land was stated to be $1,300, recited as cash in hand,
and this appears to have been its fair value.

At the execution of the deed only the sum of $268 was
actually paid; the balance of the purchase money was
set-off against the amount owing the son by the father
for money loaned him and work done for him the last
year or two next preceding the execution of the con-
veyance.

In January, 1892, the appellee, Walz, having a debt of
some $500 against John Seiler, the brother of Geo. F.,

on which the latter was surety, brought this action against Geo. F. and G. A. Seiler, grantor and grantee in the conveyance of October 5, 1891, seeking to set aside that instrument under the provisions of section 1, article 1, chapter 44, General Statutes (section 1906, Ky. Statutes), which reads as follows: "Every gift, conveyance, assignment or transfer of or charge upon any estate, real or personal, * * * made with intent to delay, hinder or defraud creditors, purchasers or other persons, * * * shall be void as against such creditors, purchasers and other persons. This section shall not affect the title of a purchaser for valuable consideration unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

By their answers the appellants denied the allegations of the appellee's petition, but after preparation the chancellor subjected the land to the payment of the debt sued on.

For the appellee it is urged, first, that there was in fact no debt due the son from the father; that this conveyance was wholly without consideration, and made by the father to the son with the sole purpose of defrauding the former's creditors, and that of that fraudulent intent the son had notice.

On this issue the proof is altogether in favor of the existence of such indebtedness. Only the father and son testify on that subject with any particularity, though they are corroborated by other circumstances

and by the testimony of a witness who, in July, 1891, heard the son demanding the payment of his debt of the father.

There is no proof contradicting this direct testimony, though it would seem to have been an easy matter to show, if such was the fact, that the son had no means, or was in fact unable to buy this land. We are convinced, therefore, that this claim is a just one, and the son a *bona fide* creditor of the father when the deed was made.

In the second place it is insisted that the father's purpose in selling the land was to defraud his creditors, and that the son had notice of this purpose; but to the extent the father was indebted to the son there could have been no fraudulent intent in the meaning of the section under which this suit was brought. The action was not to set aside a conveyance because of a fraudulent preference of a creditor. By preferring the son as a creditor the father committed no actual fraud on his other creditors. It was commendable in him to pay his debts, and he might prefer one creditor over another without committing actual fraud or doing aught that is denounced in the statute relied on by the appellee. Relief from such a preference must be sought under another and different statute. Section 1, article 2, chapter 44, General Statutes, now section 1910 of the Kentucky Statutes.

The son, however, was not a creditor to the full extent of the value of the land or of its purchase price, and if the transaction on the father's part was in any-

wise or to any extent entered into for the purpose of hindering or delaying his creditors, it falls to such extent within the terms of the statute, and if the son had notice of such intent he is not protected in the payment made by him at the time of the transfer. He will not be allowed to facilitate a disposition of property by which the debtor transforms his estate into cash, and places it beyond the reach of his creditor.

From the proof we are constrained to the belief that the intention of the father was, first, to prefer his son as a creditor; second, to place the residue beyond the reach of his other creditors, and we are of the opinion that the son had full notice of this purpose or of these purposes on the part of the father.

The brother of the appellant, Geo. F., had failed in business a few days before this deed was made, and the latter was on his paper for a large amount. Of this failure the father and son had been informed, and while it is claimed that the contract for the sale of the land had been entered into in the July previous, it is significant that no deed was made until after this information had been received, by which the father's estate would likely be involved in financial ruin.

The question is thus presented whether the son may still occupy the position of preference given him by the deed, notwithstanding his notice of the fraudulent intent of the father. As to the extent of the payment made there would seem to be no doubt. He has no claim against the land for its reimbursement, and could not present it as a claim against the estate of his father, so

as to affect other creditors.   He can not be allowed to take the chance of aiding a fraudulent scheme with the assurance that, if he fail,he will be in no worse fix than if he had not undertaken it.  The appellee, therefore un-doubtedly has, by this action and attachment therein against the land, a lien for this residue of $268.   We see no reason, however, why the deed may not stand as a security for the purpose of reimbursement or indem-nity to the son as a *bona fide* creditor and purchaser to the extent of his debt.

He has only aided in placing beyond the reach of other creditors. a sum represented by the difference be-tween his own debt and the value of the land, or, in other words, the sum of $268.   We do not think he for-feits his debt or loses a preference which is not assailed in this proceeding.

Let the land be subjected to the payment of $268, with interest from the institution of appellee's action, with division of all costs.

Wherefore the judgment is reversed for the purposes indicated.

The following response to a petition for rehearing was delivered by the Court, June 20, 1895:

It appears that there was a personal judgment against Geo. F. Seiler which is not affected by the prin-ciples decided in the opinion.   There was, in fact, no de-fense of a serious nature attempted to be interposed for him.

That judgment is, therefore, affirmed as to Geo. F. Seiler, and, as the entire judgment is superseded, the motion for damages is sustained.

To this extent the opinion is extended and modified,. and petition for rehearing overruled.